# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CSP ASSET II, LLC. | § | **Case No. 17-11513-TMD** |
| | § | **(Chapter 11)** |
| **Debtor** | § | |

**DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING DEBTOR TO ENTER INTO AN AGREEMENT FOR THE SALE OF ASSETS FREE AND CLEAR OF CLAIMS, INTERESTS, LIENS AND ENCUMBRANCES, (B) APPROVING  BIDDING PROCEDURES AND NOTICE WITH RESPECT TO SALE (C) SCHEDULING AN AUCTION AND HEARING FOR APPROVAL OF SALE, AND (D) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW **CSP Asset II, LLC ("CSP" or "Debtor"),** Debtor and Debtor-in-Possession in the above styled and numbered case, and submits this its ***Motion for Order (A) Authorizing Debtor to Enter Into an Agreement for the Sale of Assets Free and Clear of Claims, Interests, Liens and Encumbrances, (B) Approving Bidding Procedures and Notice with Respect to Sale, (C) Scheduling an Auction and Hearing for Approval of Sale, and (d) Granting Related Relief*** ("Sale Motion" or "Motion"), respectfully representing as follows:

### SUMMARY OF RELIEF REQUESTED

1.      Debtor wishes to market its assets, consisting of real property, personal property and business activities in a competitive manner which will maximize value for the estate. Debtor has developed a structure for sales procedures after extensive negotiations with its principal secured creditor, DoubleLine CRE Finance LLC ("DoubleLine").  The objective is to obtain a sale of substantially all of the Debtor's assets free and clear of liens.  If in the event that a sale of the Debtor's property does not close by the "Drop Dead Date" (defined below but in no

event more than 150 days from entry of the Bidding Procedures Order) to a third party buyer, then the Debtor shall be required to sell the property to DoubleLine by DoubleLine submitting a credit bid in an amount equal to the full amount of the indebtedness owed to DoubleLine.

2.      If a sale does close before the Drop Dead Date, DoubleLine will receive at closing payment of the principal plus non-default interest on the indebtedness owed to DoubleLine. Claims for disputed additional charges (including but not limited to default interest, fees, and expenses, yield maintenance premium and exit fees) shall be escrowed pending further court order.   Any excess proceeds shall be distributed by the Debtor consistent with the priority scheme of the Bankruptcy Code.

3.      During the sales process, the parties have agreed to a form of order on cash collateral and approved budget.   Certain contested matters will be continued or abated (the SARE Motion) during the sale process to allow the Debtor to focus its efforts in selling the property.   DoubleLine will also withdraw its objection to employment of Debtor's accountants and shall not object to employment of Carpenter & Associates as the Debtor's broker.

## JURISDICTION

4.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion itself is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5.      Venue of Debtor's Chapter 11 Case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicate for the relief sought herein are 11 U.S.C. §§105, 363 and 365 as complemented by Fed. R. Bankr. P. 2002, 6004 and 9014 and Rule 6004(b) of the Local Rules of the United States Bankruptcy Court for the Western District of Texas.

## BACKGROUND

7.      CSP Asset II, LLC d/b/a Secured Climate Storage owns a climate controlled storage facility located at 9311 FM 620, Austin, TX 78726 ("Property").   The Property consists of approximately 14.69 acres and includes 1,193 storage units totaling 277,000 square feet over twenty-one (21) buildings  The Debtor controls approximately 30% of the comparable self-storage market in its market area.  The Debtor also provides ancillary services including a United States Postal Service Center, FedEx Authorized Shipping Center, and Penske truck leasing.   As of October 31, 2016, the property was 64% leased. With a new lease scheduled to begin on March 1, 2018, it will be approximately 78% occupied.

**Company History**

8.      In 2003, James "Jim" Carpenter ("Carpenter"), an Austin real estate developer and entrepreneur, purchased the acreage on which the Property is built.  He sold it to Secured Climate Storage, LP, which built Buildings A and B.   In 2014, Hunt Companies joined the project as a preferred member.  The Property was transferred to CSP Asset I, LLC ("CSP I"), and CSP I constructed the final buildout of the property, adding Buildings C, D and RVE.   In addition to the funds received from the Hunt Companies, CSP I received a loan from Green Bank to fund construction and other operations.  In 2016, Debtor's manager, Carpenter, sought funding to repay CSP I's debt with Green Bank on the Property and buy out the preferred interest of the Hunt Companies.   TC Debt Opportunities, LLC ("Thorofare"), the lender with whom CSP I was negotiating, required as a condition of the loan that the Property be held in the name of a Delaware limited liability company and CSP Asset II (the "Debtor").  The Debtor was created on September 23, 2016.

9.      On October 24, 2016, the Debtor entered into that certain Loan Agreement (collectively, with all other associated loan documents, the "Loan Agreement"), between the

Debtor and Thorofare.  The Debtor also signed a note in favor of Thorofare in the amount of $25,500,000.00 (the "Note").  At the closing, the Property was assigned to CSP II by CSP I.  Also as part of the closing, Thorofare transferred to DoubleLine all rights and interests it held under that certain Loan Agreement between the Debtor and Thorofare.

**Events Leading to Bankruptcy**

10.     The Loan Agreement included a very detailed system for the management of Debtor's cash by DoubleLine with DoubleLine having substantial control over the Debtor's use of funds pursuant to the Loan Agreement.  However, disputes with DoubleLine arose almost immediately, especially with respect to the cash management system and the "reserve accounts" which DoubleLine established with proceeds from the loan and continued funding with Debtor's revenues from the property.

11.     In the fall of 2017, DoubleLine demanded through multiple demand letters that the Debtor replenish the Debt Service Reserve account that it had created in the amount of approximately $1.8 million.  Debtor believed the replenishment amount should be approximately $1.2 million.  The dispute was not resolved.  As a result of the alleged default, DoubleLine exercised its remedies and posted the Property for foreclosure on November 6, 2017.   Debtor filed suit to restrain the foreclosure.   The District Court of Travis County granted a temporary restraining order and DoubleLine passed the foreclosure, reposting for December 5, 2017.  On November 10, 2017, DoubleLine accelerated the debt through a Confirmation of Event of Default, Notice of Default and Notice of Acceleration.   Lengthy negotiations occurred attempting to resolve the issues between Debtor and DoubleLine without a bankruptcy filing, but those negotiations reached an impasse.

12.     In light of the impending foreclosure sale, Debtor's manager, along with the independent third-party manager, authorized the Debtor to file a bankruptcy petition in order to preserve Debtor's equity in the Property by continuing to maximize the Property's occupancy rates and revenue (and therefore value) while continuing to seek refinancing or a sale.  Its petition was filed at approximately 1:43 a.m. on December 5, 2017.

13.     On February 1, 2018, DoubleLine was scheduled to conduct a Rule 2004 examination of the Debtor's corporate representative, Carpenter, and Mike Herbert, the Debtor's accountant.  On January 30, 2018, the Debtor received a Letter of Intent (the "LOI") to purchase the Property for $30 million from SDP Investments, Ltd. ("SDP" or "Stalking Horse Bidder"). After further discussions, the Debtor and SDP agreed to an LOI, a true and correct copy of which is attached as **Exhibit "A."**

14.     Based on the LOI and to avoid the expense of prosecuting and defending other litigation between the parties, the Debtor and DoubleLine proceeded to negotiate an agreement where the parties would work together to implement a sales procedure and obtain a sale as set forth herein.

### RELIEF REQUESTED

15.     The Debtor moves the Court for entry of an order (the "Bidding Procedures Order") on an expedited basis (the "Bidding Procedures Hearing"), substantially in the form attached hereto as **Exhibit "B"**:

(i)      approving the proposed procedures (the "Bidding Procedures") to be used in connection with the sale of the Property and substantially all of the Debtor's assets (the "Purchased Assets"), but not including the Excluded Assets as defined below;

(ii)     requiring that the Debtor sell the Purchased Assets to DoubleLine pursuant to DoubleLine's credit bid if the sale of the Purchased Assets does not otherwise close to a third

party in an amount equal to $30 million or higher in cash by the "Drop Dead Date" (as defined in ¶ 27)[1];

      (iii)    approving a Stalking Horse Bidder or providing that there shall not be a Stalking Horse Bidder;

      (iv)    authorizing the Debtor to pay the break-up fee set forth in and pursuant to the terms provided herein (the "<u>Bidding Protection</u>") in the event that a Stalking Horse Bidder is approved and is not the successful bidder;

      (v)    setting the dates for (a) the bidding deadline, (b) the auction (if necessary) of the Purchased Assets, and (c) the hearing with respect to the approval of the sale (the "<u>Sale Hearing</u>")[2] and approval of notices related thereto;

      (vi)    establishing notice procedures and approving the form and manner of notice of the Sale Hearing (the "<u>Sale Notice</u>"), the proposed form of which is attached hereto as Exhibit C;

      (vii)    approving and authorizing the sale to be entered into according to agreed-upon terms by the Debtor as seller and the buyer (the "<u>Approved Buyer</u>");

      (viii)    authorizing certain procedures related to the Debtor's assumption and assignment of executory contracts and leases (the "<u>Assignment Procedures</u>") to the Approved Buyer; and

      (ix)    granting related relief.

      16.    The Debtor also moves the Court for entry of an order (the "<u>Sale Order</u>") following the Sale Hearing:

      (i)    authorizing the sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances to the Approved Buyer (such sale, the "<u>Sale Transaction</u>");

      (ii)    finding that the Approved Buyer purchased the Purchased Assets in good faith, and thus the sale is subject to Section 363(m);

      (iii)    authorizing the assumption and assignment of certain executory contracts and leases in connection therewith; and

      (iv)    granting related relief.

**The Bidding Procedures**

---

[1] Provided, however, that DoubleLine may consent, in its sole discretion, to a lower bid under the same and conditions herein.

[2] The Sale Hearing shall be scheduled within one week of the Auction (if held) or as soon thereafter as the court's schedule permits.

17.     SDP shall be given the opportunity to become the Stalking Horse Bidder.    If SDP agrees to become the Stalking Horse Bidder, its letter of intent shall be deemed to be conformed to the Bidding Procedures.  If SDP becomes the Stalking Horse Bidder as set forth herein, it shall be entitled to the Bidding Protections.    The Debtor may also propose an alternate Stalking Horse Bidder at or before the Bidding Procedures Hearing.  If no party agrees to be the Stalking Horse Bidder, then the sale shall proceed without a Stalking Horse Bidder and no party shall be entitled to the Bidding Protections.

18.     If a Stalking Horse Bidder is outbid at the Auction (defined below) or otherwise is not ultimately the Approved Buyer, the Stalking Horse Bidder shall be entitled to a payment in the amount of the greater of (i) 5% of the differential between the Opening Bid and the Winning Bid ("Differential") plus its reasonable expenses or (ii) 10% of the Differential; provided that the Stalking Horse Bidder does not withdraw its bid prior to the auction.  For example, if the Opening Bid is $30,000,000 and the Winning Bid is $35,000,000, then the Differential would be $5,000,000.   The Stalking Horse Bidder would be entitled to the greater of $250,000 plus its reasonable expenses or $500,000.  If a Stalking Horse Bidder is selected, it shall deposit $100,000 in earnest money with Stewart Title Company of Austin, LLC upon execution of an earnest money contract and an additional $100,000 at the conclusion of the due diligence period as set forth in Exhibit A

19.     Within seven days after entry of the Bidding Procedures Order, the Debtor shall establish a data room containing the Debtor's financial information, projections, contracts and other materials sufficient to allow potential bidders to conduct due diligence.   The Debtor shall allow access to the data room to those parties who shall execute a Non-Disclosure Agreement in a form satisfactory to the Debtor.

20.     The Debtor shall give notice of the proposed sale to:  (i) all creditors and parties in interest; (ii) all parties with whom the Debtor has conducted discussions or negotiations with regard to sale of the Debtor's assets;; and (iii) any other parties suggested byparties in interest within forty-eight hours before the notice is to be given.

21.     Within forty days after entry of the Bidding Procedures Order, the Debtor shall file a proposed Asset Purchase Agreement ("APA") with the Court.  If in the event a Stalking Horse Bidder is not selected, a form of APA agreed to by DoubleLine shall be filed with the Court.  The Debtor shall provide copies of the APA in word processing format to any Qualified Bidder (defined below) requesting one.

22.     Qualified Bidders[3] must submit a Qualified Bid (defined below) received by the Debtor within eighty days after entry of the Bidding Procedures Order (the "Bid Deadline").   A Qualified Bid is one that is:  (i) equal to at least $30,250,000; (ii) is accompanied by earnest money in the amount of $200,000; (iii) does not contain a financing or due diligence condition; (iv) does not materially vary from the APA form provided by the Debtor; (v) contains proof of financial wherewithal to close on any sale of the Property acceptable to the Debtor; and/or is in such amount as Debtor and DoubleLine may agree.  The bid by the Stalking Horse Bidder shall be deemed to be a Qualified Bid.   Bidding shall proceed in increments of $100,000.00.

23.     In the event that two or more Qualified Bids are received, the Court shall conduct an auction at a date not later than ninety days after the entry of the Bidding Procedures Order (the "Auction").  The date of the Auction shall be provided in the Bidding Procedures Order.   At the conclusion of the Auction, the Debtor shall select the highest and best offer ("Winning Bid"). The second highest bidder shall be given the opportunity to be a back-up bidder (the "Back-Up Bidder").

---

[3] Qualified Bidder is defined as an entity that submits a Qualified Bid.

24.     In the event that no sale of the Property closes by the "Drop Dead Date" (defined below), DoubleLine shall be unequivocally entitled to buy and the Debtor shall be ordered to sell the Property to DoubleLine by DoubleLine submitting a credit bid in an amount equal to the entire amount of the indebtedness owed by the Debtor to DoubleLine.   Any such credit bid shall have the effect of extinguishing the outstanding indebtedness of the Debtor to DoubleLine and releasing any guarantors on such debt.

25.     The Bidding Procedures Order shall set a date for the Auction and the Sale Hearing.

**The Sale Order**

26.     The LOI, listing the material terms of the to-be-finalized APA, is incorporated herein by reference. The Debtor will file the fully executed APA and corresponding proposed Sale Order, in form and substance reasonably acceptable to the Buyer as a supplement to this Motion at least seven (7) days prior to the Sale Hearing.   The proposed APA will contain the following material terms:

Purchased Assets:

Secured Climate Storage, located at 9311 FM 620, Austin, Texas 78726, a 1,200 unit self storage facility on 14.69 acres, with 21 buildings and approximately 277,000 SF of Gross Building Area and approximately 203,083 SF of Net Rentable Area.

The tangible personal property used in connection with the self-storage facility listed on the attached Exhibit D.

All rights, to the extent assignable or transferable, to all licenses permits, approvals, certificates of need, certificates of exemption, franchises, accreditations and registrations and other governmental licenses, permits or approvals issued to the Debtor and necessary to operate the Purchased Assets.

All rights, to the extent assignable, in all warranties, representations and guaranties of any manufacturer, vendor or contractor in connection with the other Purchased Assets.

All copyrights, copyright applications, patents, patent applications, trade secrets, technology and

know-how.

All computer software programs and computer software licenses, whether owned or licensed, and all written materials relating to such computer software programs relating to the other Purchased Assets, to the extent assignable;

All books and records, whether in electronic or written form, relating to the operation of the Debtor's business  or relating to the other Purchased Assets.

In the event that any bidder wishes to purchase less than all of the Purchased Assets, it shall not be entitled to a credit or reduction in its bid.

<u>Excluded Assets:</u>
All assets not specified above, including but not limited cash, cash equivalents, accounts receivable, reserves, deposits and Causes of Action, including Causes of Action under Chapter 5 of Title 11 of the United States Code.

<u>As Is, Where Is:</u>  All assets shall be sold "as is, where is."

<u>Purchase Price</u>: $30,000,000.00.

<u>Deposit</u>:  The deposits shall be returned to the Stalking Horse Bidder in the event that (a) no APA is executed; or (b) the conditions of Closing do not occur.  If any deposit has been made by the Back-Up Bidder, then the deposit shall be returned to the Back-Up Bidder in the event that the Back-Up Bidder is not selected as the Buyer.

<u>Sale Free and Clear</u>: All Purchased Assets will be transferred to the Buyer, pursuant to section 363(f) of the Bankruptcy Code, free and clear of all claims, liens, encumbrances, interests and other restrictions of any kind or nature whatsoever, including, without limitation, any and all successor liability claims and any and all prepetition and post-petition adequate protection liens of the Debtor's prepetition lenders, in each case, as set forth in the Sale Order. Any such liens existing at the time of the consummation of the sale will attach to the sale proceeds according to their relative priorities.

<u>The Proposed Sale was Negotiated in Good Faith</u>:  The proposed sale will be negotiated and will continue to be negotiated in good faith as to qualify any buyer of the Purchased Assets as a "good faith purchaser", and, as such, subject the sale to Section 363(m).

27.     The Sale Order shall contain a deadline for closing.   The closing deadline for the

Winning Bid shall be 120 days after entry of the Bidding Procedures Order.  If the Winning

Bidder shall fail to close and a Back-Up Bidder has been selected at the Auction, the closing

deadline for the Back Up-Bidder shall be 150 days after entry of the Bidding Procedures Order. The later of the closing deadlines set forth herein shall be the "Drop Dead Date." The closing date and the Drop Dead Date may be extended by DoubleLine in DoubleLine's sole discretion.

28.     The Sale Order shall provide for DoubleLine to receive payment of its principal together with non-default interest at closing (other than a credit bid by DoubleLine).   The Sale Order shall further provide that claims for disputed additional charges (including but not limited to default interest, fees and expenses, yield maintenance premium and exit fee) shall be escrowed pending further court order.

**Assignment and Cure Procedures**

29.     No later than seven (7) days before the Sale Hearing, the Debtor will file and serve a notice (the "Assumption and Assignment Notice") scheduling all of the executory contracts and leases that may be assumed and assigned pursuant to the Sale Transaction (the "Assumed Contracts and Leases").   The Assumption and Assignment Notice will notify all counterparties to the Assumed Contracts and Leases (a) that their executory contracts and unexpired leases may be assumed and assigned to either the Stalking Horse Bidder or an alternative bidder; and (b) of the cure amounts in the event the Debtor decides to assume such contracts or leases and assign them to the eventual purchaser.  Any counterparty objecting to the assumption and assignment or cure amount must file an objection three (3) days prior to the Sale Hearing.

## BASIS FOR RELIEF

A.  The Bidding Procedures Are Fair, Appropriate and Are Designed to Maximize the Value Received for the Purchased Assets

30.     Bankruptcy Code §363(b)(1) provides that "[t]he Debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). The Debtor submits that the Bidding Procedures are appropriate and consistent with procedures approved by courts in this district. The Debtor further submits that the Bidding Procedures ensure that the bidding process is fair and reasonable and will yield the maximum value for the estate and its creditors. The Bidding Procedures proposed herein are designed to maximize the value received for the Purchased Assets by facilitating a robust sales process that includes a competitive bidding process in which all Qualified Bidders are encouraged to participate and submit competing bids. At the same time, the Bidding Procedures provide the Debtor with an adequate opportunity to consider all competing offers and to select, in the Debtor's reasonable business judgment, the highest and best offer for the Purchased Assets. Accordingly, the Debtor submits that the Court should approve the Bidding Procedures.

B.      The Break-Up Fee Has a Sound Business Purpose and Should Be Approved

31.     The Debtor believes the presence of a Stalking Horse Bidder will set a floor for the value of the Purchased Assets and attract other potential buyers to bid for the Purchased Assets, thereby maximizing the realizable value of the Purchased Assets for the benefit of the Debtor's estate, creditors and other parties-in-interest.

32.     The proposed Bidding Protection is appropriate and should be approved. Bankruptcy Courts have recognized that bid protections may be used to protect bidders in connection with a sale of assets pursuant to section 363 of the Bankruptcy Code and that such fees can be important tools to encourage bidding and to maximize the value of the debtor's assets. Bidding Protections are evaluated under the business judgment standard. *ASARCO, Inc. v. Elliott,* 650 F.3d 593 (5th Cir. 2011). Such protections enable a Debtor to assure a sale to a contractually-committed bidder at a price the Debtor believes is fair and reasonable, while providing the Debtor with the opportunity to obtain even greater benefits for the estate through

an auction process.  *See In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may be "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).

33.     The Bidding Protection is reasonable and appropriate in light of the size and nature of the transaction and the efforts that have been and will be expended by the Stalking Horse.  Moreover, the Bidding Protection was negotiated in good faith and is necessary to secure a Stalking Horse's commitment to purchase the Debtor's assets. In sum, the Debtor's ability to offer the Bidding Protection enables the Debtor to ensure the sale of the Purchased Assets at a price it believes to be fair while, at the same time, providing it with the potential of even greater benefit to the estate.

34.     The Debtor has determined the inclusion of the Bidding Protection is absolutely necessary to successfully pursue the Sale Transaction and maximize recoveries for the Debtor's estate. Accordingly, the Debtor submits that the Bidding Protection reflects a sound business purpose, is fair and appropriate under the circumstances, and the Debtor respectfully submits that the Bidding Protection should be approved.

C.     Approval of the Sale is Warranted Under Section 363 of the Bankruptcy Code

35.     Section 363(b) of the Bankruptcy Code provides that a Debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A Debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *See, e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In re Global Crossing Ltd.*,

295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and the transaction is conducted in good faith).

36.     The Debtor possesses ample and sound business reasons for selling the Purchased Assets, including the Property, as set forth herein.  The proposed sale procedure was negotiated with its secured lender, DoubleLine.  The sale will result in the satisfaction of the outstanding indebtedness owed to DoubleLine, either through a sale to a third party or the credit bid.  The Bidding Procedures provide the Debtor with the opportunity to seek out higher offers for the Debtor's assets.  For these reasons, the Debtor has determined that a sale, conducted in accordance with the Bidding Procedures, is in the best interests of the Debtor's estate.

37.     The proposed transaction also meets the additional requirements necessary to approve a sale under section 363 of the Bankruptcy Code. As stated herein, the Debtor will provide adequate notice of the Sale Transaction to interested parties, and the Debtor submits that the aforementioned notice procedures are reasonable and adequate under the circumstances. In addition, the Debtor will continue to market the Property and related assets up until the Bidding Deadline in order to maximize the number of participants who may participate as a Qualified Bidder at the Auction.  Accordingly, the Debtor is confident that the sale process will maximize the value to be achieved from the Sale Transaction and that the sale price is fair and reasonable.

38.     Finally, SDP has proceeded in good faith. The Debtor was represented by counsel in the arm's-length negotiations of the LOI. As such, it is a valid exercise of the Debtor's business judgment to seek the relief requested by this Motion.

D.     The Proposed Sale Transaction Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear

39.     The Debtor requests approval to sell the Purchased Assets free and clear of any and all liens, claims, interests and encumbrances, except for any assumed liabilities pursuant to the APA, in accordance with §363(f) of the Bankruptcy Code. Pursuant to §363(f), a Debtor may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b)     such entity consents;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

40.     Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987)("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

41.     The Debtor submits that the Sale Transaction will satisfy the requirements of section 363(f) of the Bankruptcy Code. To the extent a party objects to the Sale Transaction on the basis that it holds a lien or encumbrance on the Purchased Assets, including the Property, the

Debtor believes that any such party could be compelled to accept a monetary satisfaction of such claims or that such lien would be in bona fide dispute. In addition, the Debtor will provide such party with notice of, and an opportunity to object to, the Sale Transaction. Absent objection, each such party will be deemed to have consented to the sale of the Purchased Assets.

42.     Accordingly, the Debtor believes that the Sale Transaction (i) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (ii) should be approved free and clear of all liens, claims, interests and encumbrances.

E.     The Successful Bidder Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).

43.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith," the Fifth Circuit Court of Appeals has held that :

> an appropriate characterization of good faith in a bankruptcy sale is a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

*Hytken v. Williams (In re Beach Dev., LP)*, 2008 U.S. App. LEXIS 12240 (5th Cir. 2008).

44.     In other words, a party would have to show fraud or collusion between the buyer and the debtor in possession or Debtor or other bidders in order to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders

or the Debtor, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Angelika Films*, 57th, Inc., 1997 WL 283412, *7 (S.D.N.Y. 1997); *In re Balcalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (*quoting In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

45.     The Debtor submits SDP, or other successful bidder arising from the Auction, is, or would be, a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. The terms of the APA, or any marked version thereof, is, or would be, a good faith agreement on arm's-length terms. The consideration to be received by the Debtor pursuant to the APA is substantial, fair, and reasonable. Additionally, the parties will enter into the APA in good faith and after extensive, arm's-length negotiations, during which both parties will be represented by competent counsel of similar bargaining positions.

46.     The Debtor shall submit evidence at the Sale Hearing to support a finding that the Approved Buyer purchased the Property and/or Purchased Assets in "good faith" as the term is used under Section 363(m) of the Bankruptcy Code and that that there was no indication of any "fraud, collusion between the purchaser and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale Transaction or APA to be avoided under section 363(n) of the Bankruptcy Code. Accordingly, the Debtor believes SDP (or other successful bidder) and the APA (or other purchase agreement) should be entitled to the full protections of Section 363(m) of the Bankruptcy Code.

F.     Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be
       Authorized

47.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a Debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). The standard governing bankruptcy court approval of a Debtor's decision to assume or reject an executory contract or unexpired lease is whether the Debtor's reasonable business judgment supports assumption or rejection. *See, e.g., Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the Debtor or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject").

48.     The business judgment test "requires only that the Debtor [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985).  Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, the Debtor may not assume an executory contract or lease unless the Debtor "cures, or provide adequate assurance that the trustee will promptly cure" any default. 11 U.S.C. 365(b)(1).

49.     Once an executory contract or lease is assumed, the Debtor may elect to assign such contract. Section 365(f) of the Bankruptcy Code provides that the "Debtor may assign an

executory contract or unexpired lease of the debtor only if… the Debtor assumes such contract… and adequate assurance of future performance by the assignee of such contract or lease is provided…" 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case. Adequate assurance may be provided, among other means, by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc*. 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of success).

50.     The Debtor requests approval under Bankruptcy Code section 365 of the assumption and assignment of the Assumed Contracts and Leases to the Stalking Horse Bidder or a successful alternative bidder. The Debtor further requests that the Sale Order provide that the Assumed Contracts and Leases will be transferred to, and remain in full force and effect for the benefit of, the Stalking Horse Bidder or an alternative bidder notwithstanding any provisions in the Assumed Contracts and Leases, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (f)(3) that prohibit such assignment.

51.     To the extent necessary, the Debtor will present facts at the Sale Hearing to show the financial wherewithal, willingness, and ability of the Stalking Horse Bidder or the successful alternative bidder to perform under the Assumed Contracts and Leases. The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of SDP or the successful alternative bidder to provide adequate assurance of future performance under the Assumed Contracts and Leases, as required under Bankruptcy Code section 365(b)(1)(C).

52.     Further, as set forth above, the Debtor will give notice to all parties to the Assumed Contracts and Leases. This notice will include the amounts the Debtor believes are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code. Accordingly, the Debtor submits that implementation of these proposed Assignment Procedures is appropriate in these cases.

G.     Requests for Immediate Relief & Waiver of Stay

53.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the Debtor to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests that the Bidding Procedures Order and Sale Order be effective immediately by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

54.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, Collier on Bankruptcy suggests that the fourteen-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, 6004.11 (L. King, 16th rev. ed. 2011). Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id*.

55.     Accordingly, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

WHEREFORE, Debtor's respectfully request that the Court enter the Sale Procedures Order, substantially in the form set forth herein, and grant such other relief as the court may deem just and proper.

DATED:      February 9, 2018

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 649-3243
(512) 476-9253 Facsimile

By:     /s/ Stephen W. Sather
Barbara M. Barron (SBN 01817300)
Stephen W. Sather (SBN. 17657520)

**ATTORNEYS FOR DEBTOR**

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Application was served by first class mail, postage prepaid and properly addressed, on February 9, 2018, to all parties listed on the attached Service List and electronically by the Court's ECF system to all parties registered to receive such service.

_____/s/Stephen W. Sather_____

# FIRST MASTER SERVICE LIST
### *(January 9, 2017)*

**United States Trustee:**

Henry G. Hobbs,
Deborah Bynum
Office of the U.S. Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701
henry.g.hobbs@usdoj.gov
deborah.a.bynum@usdoj.gov

**Debtor:**

CSP Asset II, LLC
12400 West Highway 71, Suite 350-115
Austin, TX 78738

**Professionals for Debtor:**

Barbara M. Barron
Stephen W. Sather
Barron & Newburger, P.C.
7320 N. MoPac Expressway
Greystone II, Suite 400
Austin, TX 78731
bbarron@bn-lawyers.com
ssather@bn-lawyers.com

**Secured Creditors (cont'd):**

Doubleline CRE Finance, LLC
333 S. Grand Avenue, 18th Flr
Los Angeles, CA 90071-3349

Travis County
% Travis Co. Atty's Office
PO Box 1748
Austin, TX 78767

**Twenty Largest Unsecured Creditors:**

Pedernales Electric Coop
PO Box 1
Johnson City, TX 78636
Wells Fargo Bank

**Twenty Largest Unsecured Creditors (cont;d):**

City of Austin
PO Box 2267
Austin, TX 78768-2267

American Express
PO Box 650448
Dallas, TX 75265-0448

Ridout, Barrett & Co., P.C.
3305 Northland Drive, Suite 100
Austin, TX 78731

Kurt Hudspeth
1141 N. Loop 1604E
Suite 105-180
San Antonio, TX 78232

Novogradac & Company, LLC
11044 Research Blvd., Suite 400
Blvd., C
Austin, TX 78759

Texas Protax Austin, Inc.
8322 Cross Park Drive
Austin, TX 78754

Central Texas Refuse
PO Box 18685
Austin, TX 78760

SpareFoot
720 Brazos Street, Suite 300
Austin, TX 78701

Uline
PO Box 88741
Chicago, IL 60680-1741

Texas Business Banking
MAC T5601-012
PO Box 659700
San Antonio, TX 78286-0700

**Twenty Largest Unsecured Creditors (cont;d):**

Wells Fargo Bank
PO Box 659700
San Antonio, TX 78265-9700

Internal Revenue Service
Attn: Special Procedures
300 E. 8th Street, Stop 5026AUS
Austin, TX 78701

AT&T Inc.
c/o James Grudus Esq.
One AT&T Way, RM 3A218
Bedminster, NJ 07921

Texas Comptroller of Public Accounts
Office of the Attorney General
Collection Division

Shred-It USA, LLC
28883 Network Place
Chicago, IL 60673

Austin American Statesman
PO Box 742624
Cincinnati, OH 45274-2624

SALT Light & Electric
3808 Harvey Penick Drive
Round Rock, TX 78664
Benchmark Landscapes, LLC
1814 W. Howard Lane
Austin, TX 78728

Dish Network 1
PO Box 94063
Palatine, IL 60094-4063

**Additional Notice:**

Eric Monzo
Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Timothy ("Tad") Davidson II
Edward A. Clarkson, III
Andrews Kurth Kenyon, LLP
600 Travis, Suite 4200
Houston, TX 77002
taddavidson@andrewskurth.com
edwardclarkson@andreskurth.com

Kathleen Tarbox Munoz
Andrews Kurth Kenyon, LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
kathleenmunoz@andrewskurth.com

Kay D. Brock
Assistant Travis County Attorney
PO Box 1748
Austin, TX 78767
Kay.brock@traviscountytx.gov

February 5, 2018

VIA E-MAIL

Mr. James Carpenter, CEO
Carpenter & Associates
1700 Palisades Point Lane
Austin, TX 78738
jim@carpenteraustin.com

RE:    Letter of Intent ("LOI") to Purchase Secured Climate Storage, 9311 FM 620, Austin, TX 78726

Dear Jim:

This letter of intent shall serve as our agreement to the terms proposed herein by which SDP Investments, Ltd., or an affiliated Partnership ("Buyer") proposes to acquire the subject property (as defined below) from Seller. This document is not a contract, but is intended to demonstrate good faith between the parties to negotiate, draft and enter into an earnest money contract on terms generally as outlined below. The contract is to be negotiated between Buyer and Seller within the time period stated herein and must be approved by the United States Bankruptcy Court for the Western District of Texas.

| | |
|---|---|
| Purchase Price: | $30,000,000 |

Property:    Secured Climate Storage, located at 9311 FM 620, Austin, Texas 78726, a 1,200 unit self storage facility on 14.69 acres, with 21 buildings and approximately 277,000 SF of Gross Building Area and approximately 203,083 SF of Net Rentable Area.

Earnest Money:    To be deposited as follows:

$100,000 to be deposited in escrow at Stewart Title Company of Austin, LLC, Attn.: Marie Love, as escrow agent, ("Title Company"), concurrently with the deposit into the Title Company of a fully executed Earnest Money Contract ("Contract").

If, prior to the end of the Due Diligence Period or Financing Period, as defined below, Buyer notifies the Seller of its intent to terminate the transaction, the Earnest Money shall promptly be refunded to Buyer and all obligations of the parties to each other shall cease.

If Buyer does not terminate the Contract prior to the end of the Due Diligence Period, Buyer will deposit an additional $100,000 of Earnest Money with the Title Company within two (2) business days after expiration of the Due Diligence Period (60 days).

Due Diligence Period:    After the execution of the Contract, Buyer shall have the right to conduct reasonable due diligence relating to the Property. Seller agrees to furnish to Buyer or give Buyer access to all relevant information in possession or control of Seller within two (2) calendar days of the Effective Date of the Contract, including but not limited to the following items in Seller's possession or readily available to Seller: Title commitments, surveys, engineering reports, environmental reports, current YTD and past three (3) years' operating statements and budgets, architectural plans, permits, certificates of occupancy, floor plans, property tax statements, maintenance records, existing loan documents, and so forth.

The Due Diligence Period will begin on the date the Title Company acknowledges

receipt of the Contract executed by Buyer and Seller (Contract "Effective Date"). The Due Diligence Period will end sixty (60) days after the Effective Date of the Contract.

Financing Contingency: None. Buyer will be arranging debt financing through one of its lenders, and Seller cooperation will be a condition of the purchase contract but financing will not be a condition of the contract.

Closing: The closing of the transaction shall be thirty (30) days after the end of the Due Diligence Period, unless Buyer makes another $100,000 non-refundable deposit into escrow to extend closing by up to fifteen (15) days. In any event, Buyer and Seller may close on an earlier date if mutually agreed upon.

Closing Costs: Seller will pay its legal fees, the cost of an ALTA survey acceptable to the Title Company and Buyer, and the base cost of title insurance. The Buyer will pay costs customarily borne by a purchaser of commercial real estate, and any additional title costs for lender-required endorsements to the title insurance policy.

Broker: There will be a total of three percent (3%) of the gross sales price set aside as a real estate commission to be divided between any brokers involved in the transaction, if approved by the Bankruptcy Court.

Timing: Immediately upon the execution of this LOI, the Buyer will diligently pursue the drafting of the Contract. The Contract will include all terms and conditions and matters typical of a transaction of this type.

Expiration: This Letter of Intent will expire at 5:00 P.M CDT., Monday, February 12, 2018, unless executed prior to that time by all parties.

Assignment: Buyer will have the right to assign the Contract to an affiliated entity upon written notice to Seller.

Bidder Protections: Buyer recognizes that higher and better offers may be submitted in the context of court approval of this LOI. If another offer is approved, Buyers shall receive the greater of: (i) its out-of-pocket expenses in connection with its offer and five percent (5%) of the differential between Buyer's offer and the offer approved by the Court ; or (ii) ten percent (10%) of the differential between Buyer's offer and the offer approved by the Court. If there are multiple bidders for this property, these protections will not prevent Buyer from increasing its bid.

If these terms are acceptable, please acknowledge approval below and return one fully executed copy to us.

Sincerely,

SDP Investments, Ltd. ("Buyer")

Stephen A. Pyhrr, Ph.D.
General Partner

AGREED TO AND ACCEPTED BY:

CSP Asset H, LLC

By: _James R. Carpenter_

Title: __Authorized Signatory_____

Date: _2 - 5 - 2018_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CSP ASSET II, LLC,** | ) | **Case No. 17-11513-TMD** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |
| | ) | |

**NOTICE OF (A) SOLICITATION OF BIDS TO PURCHASE SUBSTANTIALLY ALL
ASSETS OF THE DEBTOR, (B) AUCTION AND (C) SALE HEARING**

TO All PERSONS SHOWN ON THE CERTIFICATE OF SERVICE BELOW, PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On [February 14, 2018], CSP ASSET II, LLC (the "Debtor") filed the Motion for Order (A) Authorizing Debtor to Enter Into an Agreement for the Sale of Assets Free and Clear of Claims, Interests, Liens and Encumbrances, (B) Approving Bidding Procedures and Notice with Respect to Sale, (C) Scheduling an Auction and Hearing for Approval of Sale, and (d) Granting Related Relief  ("Sale Motion" or "Motion") with the United States Bankruptcy Court for the Western District of Texas.[1]

2.      You may obtain a copy of the Sale Motion, the Bidding Procedures Order and the APA by sending a written request to counsel for the Trustee, Barron & Newburger, P.C., 7320 N. MoPac Expy, Suite 400, Austin, Texas 78731, Attn: Barbara M. Barron, bbarron@bn-lawyers.com.

3.      As outlined in the Sale Motion, the Debtor has agreed upon the material terms of a sale of substantially all of the Debtor's assets, including but not limited to the Debtor's property located at 9311 FM 620, Austin, TX  78726 (the "Property") equipment, other tangible and intangible property, and books and records.   Further, the Debtor has selected SDP

---

[1] Capitalized terms not otherwise defined herein have the meaning given them in the Sale Motion.

Investments, Ltd. or its designee , c/o Steven Pyhrr, 10806 River Terrace, Austin, TX 78733, ("SDP" or "Stalking Horse Bidder") as its proposed stalking horse bidder, for the purchase price of $30,000,000.00. Note that the Debtor is required to sell the Purchased Assets to DoubleLine CRE Finance, LLC ("DoubleLine"), its senior secured lender, pursuant to DoubleLine's credit bid if the sale of the Purchased Assets does not otherwise close to a third party in an amount equal to $30 million or higher in cash by the "Drop Dead Date" (as the term is defined in the Sale Motion).

4.      The Debtor certifies that the sale is consistent with all policies prohibiting the transfer of personally identifiable information pursuant to FRBP 2002(c)(1). The Debtor estimates that the cost of the sale should be no more than $1,000,000. The Debtor estimates that there will not be any tax consequences to the estate based on the estate's substantial net operating loss carryforward.

5.      The Debtor will also seek motivated, financially able and legally qualified over-bidders for the Purchased Assets prior to the Auction date. On February __, 2018, the Court entered the Bidding Procedures Order [Dkt. No. ___]. The Bidding Procedures Order specifies, among other things, procedures under which interested parties may submit a Qualified Bid to purchase all or substantially all of the Debtor's assets. All interested parties are invited to submit a Qualified Bid pursuant to the terms of the Bidding Procedures Order.

6.      Qualified Bids must be submitted in writing to counsel for the Debtor, Barron & Newburger, P.C., 7320 N. MoPac Expy, Suite 400, Austin, Texas 78731, Attn: Barbara M. Barron, bbarron@bn-lawyers.com and actually received no later than _____ at 12:00 p.m. Central Time (the "Bidding Deadline").

7.      In the event the Debtor timely receives, on or before the Bidding Deadline, one or more Qualified Bids, an Auction shall be conducted in open court at 903 San Jacinto, Courtroom No. 1, Austin, TX 78701 on _____, 2018 at _____ o'clock Central Time.

8.      If the Debtor does not receive a Qualified Bid (other than the Stalking Horse Bid) on or prior to the Bidding Deadline, no Auction shall take place and, instead, the Debtor will

2

seek approval of the sale of the Purchased Assets to the Stalking Horse Bidder or its designee pursuant to the APA at the Sale Hearing.

9. The Sale Hearing will be held in United States Bankruptcy Court for the Western District of Texas, 903 San Jacinto, Courtroom No. 1, Austin, TX 78701 on [**May 18, 2018 at 1:30 p.m**. Central Time. ]

10. Objections to the relief sought in the Sale Order must (a) be in writing and (b) be filed and served no later than _____ at 5:00 p.m. Central Time.

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
7320 N. MoPac Expy., Suite 400
Austin, Texas 78731
(512) 476-9103 Ext. 220
(512) 476-9253 Facsimile

By:   */s/ Stephen W. Sather*
Barbara M. Barron
State Bar No. 01817300
Stephen W. Sather
State Bar No. 17657520

Counsel for the Debtor

## CERTIFICATE OF SERVICE

I certify that on the _____ day of February, 2018 a copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas by first class mail to the persons on the attached list and to the following additional parties in interest:

/s/ Stephen W. Sather
Stephen W. Sather
Counsel for the Debtor

4

Exhibit C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **CSP ASSET II, LLC,** | § | **Case No. 17-11513-TMD** |
| | § | **(Chapter 11)** |
| **Debtor.** | § | |

**ORDER APPROVING DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING**
**DEBTOR TO ENTER INTO AN AGREEMENT FOR THE SALE OF ASSETS FREE**
**AND CLEAR OF CLAIMS, INTERESTS, LIENS AND ENCUMBRANCES, (B)**
**APPROVING  BIDDING PROCEDURES AND NOTICE WITH RESPECT TO SALE (C)**
**SCHEDULING AN AUCTION AND HEARING FOR APPROVAL OF SALE, AND (D)**
**GRANTING RELATED RELIEF**

On February [__], 2018, the Court conducted hearing regarding the Motion for Order (A)

Authorizing Debtor to Enter Into an Agreement for the Sale of Assets Free and Clear of Claims,

Interests, Liens and Encumbrances, (B) Approving Bidding Procedures and Notice with Respect

to Sale, (C) Scheduling an Auction and Hearing for Approval of Sale, and (d) Granting Related

HOU:3864855.3

Relief ("<u>Sale Motion</u>" or "<u>Motion</u>") filed by CSP Asset II, LLC (the "Debtor");

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334.  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The Debtor has provided due and proper notice of the Motion and Bidding Procedures Hearing[1] and no further notice is necessary.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion with respect to the Bidding Procedures and Bidding Protection has been afforded to all interested persons and entities.

C.    The Debtor's proposed notice of the Motion, the Bidding Procedures as set forth herein, the Auction, and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

D.    The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize the recovery from a sale of the Purchased Assets.

E.    The Debtor and DoubleLine CRE Finance LLC ("DoubleLine") each negotiated the Bidding Procedures in good faith and at arm's length.

G.    The Debtor has demonstrated a compelling and sound business justification for the Court to enter this Order and thereby (i) approve the Bidding Procedures for the sale of substantially all of the Debtor's assets (ii) approve the Bidding Protections (if applicable); (iii) set the dates of the Bidding Deadline, Auction (if required), and Sale Hearing; (iv) establish notice procedures and approve the form of notice; and (v) approve the procedures related to the Debtor's assumption and assignment of executory contracts and unexpired leases in connection with the Sale Transaction.

H.    The Bidding Protection, as approved by this Order, is fair and reasonable and provides a benefit to the Debtor's estate and creditors.

---

[1] Defined terms used herein shall have the same meaning ascribed in the Motion.

I.      Entry of this Order is in the best interest of the Debtor's estate, creditors, interest holders and all other parties-in-interest herein.

J.      The Assignment Procedures are reasonably calculated to provide counterparties to the Assumed Contracts and Leases with proper notice of the potential assumption and assignment of the Assumed Contracts and Leases and any cure amounts relating thereto.

K.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Bidding Procedures attached hereto as **Exhibit "A"** and incorporated herein by reference as if fully set forth in this Order, are hereby approved and shall govern all proceedings relating to the sale of substantially all of the Debtor's assets (the "Purchased Assets"), including the Property.

2.      Any objections to the Bidding Procedures that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

3.      The Debtor shall sell the Purchased Assets to DoubleLine pursuant to DoubleLine's credit bid if the sale of the Purchased Assets does not otherwise close to a third party in an amount equal to $30 million or higher in cash by the "Drop Dead Date." The closing deadline for the Winning Bid shall be 120 days after entry of this Bidding Procedures Order. If the Winning Bidder shall fail to close and a Back-Up Bidder has been selected at the Auction, the closing deadline for the Back Up-Bidder shall be 150 days after entry of this Bidding Procedures Order. The later of the closing deadlines set forth herein shall be the "Drop Dead Date."

4.      The deadline to submit a Qualified Bid for the Purchased Assets shall be [**Friday, May 4, 2018 at 5:00 p.m.**] (Central Time) (the "Bid Deadline").

5.      SDP Investments, Ltd. is approved to be the Stalking Horse Bidder. [Or change to add that no Stalking Horse Bidder has been selected]. The Bidding Protections listed in the Bidding Procedures are approved.

3

6.      If a Qualified Bid (other than the Stalking Horse Bid) by a Qualified Bidder is received for the purchase of the Purchased Assets by the Bid Deadline, **the Auction will be conducted on [Tuesday, May 15, 2018 at 2:00 p.m.** (Central Time)] (the "Auction") in open court at 903 San Jacinto, Courtroom No. 1, Austin, TX 78701..

7.      If no other Qualified Bid (other than the Stalking Horse Bid) by a Qualified Bidder is received for the purchase of the Purchased Assets by the Bid Deadline, then no Auction will be held and the Debtor will proceed to seek approval of the sale of the Purchased Assets pursuant to the Stalking Horse APA at the Sale Hearing.

8.      **The Sale Hearing Shall be set on [May 18, 2018 at 1:30 p.m.]** and will be held in United States Bankruptcy Court for the Western District of Texas, located at 903 San Jacinto, Courtroom No. 1, Austin, TX 78701.

9.      Objections to the relief sought in the order approving the sale (the "Sale Order") must (a) be in writing and (b) filed and served, so as to be actually received by (a) the Debtor; (b) counsel for the Debtor; (c) counsel for the Approved Buyer; and (d) the Office of the United States Trustee for the Western District of Texas (the "Notice Parties") no later than [**May 16, 2018 at 5:00 p.m. (Central Time)]**.  Any replies to objections to the relief sought in the Sale Order shall be submitted no later than one day before the Sale Hearing.

10.      The form of Sale Notice attached to this Order as **Exhibit "B"** is approved. Service of the Sale Notice in the manner described in the Motion shall constitute good and sufficient notice of the Auction and the Sale Hearing.

11.      The Assignment Procedures set forth in the Motion and Bidding Procedures are hereby approved.  No later than [**May 11, 2018**,] the Debtor will file and serve a notice (the "Assumption and Assignment Notice") scheduling all of the executory contracts and leases that may be assumed and assigned pursuant to the Sale Transaction (the "Assumed Contracts and Leases").

12.      Any objection (including to the cure amount set forth in the Assumption and Assignment Notice) to the Debtor's assumption of any of the Assumed Contracts and Leases and

4

assignment of the Assumed Contracts and Leases to the successful bidder must be in writing, filed with the Court, and be actually received by the Notice Parties no later than [**May __, 2018 at 5:00 p.m.**] (the "<u>Assignment and Cure Objection Deadline</u>"), and must set forth a specific default under the Assumed Contracts and Leases and claim a specific monetary amount that differs from the amount, if any, specified by the Debtor in the Assumption and Assignment Notice.

13.     If no objection is received by the Assignment and Cure Objection Deadline, then the assumption and assignment of the applicable Assumed Contracts or Leases will be authorized pursuant to section 365 of the Bankruptcy Code.

14.     Notwithstanding Bankruptcy Rules 6004, 6006, or otherwise, this Order will be effective and enforceable immediately upon entry and its provisions shall be self-executing.

15.     The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

###

Order Submitted By:

Stephen W. Sather
Barron & Newburger, P.C.
7320 N. MoPac Expwy, Suite 400
Austin, TX 78731

HOU:3864855.3

**EXHIBIT A**
**(Bidding Procedures)**

HOU:3864855.3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CSP ASSET II, LLC, | § | **Case No. 17-11513-TMD** |
| | § | **(Chapter 11)** |
| Debtor. | § | |

## BIDDING PROCEDURES

By motion dated February 9, 2018 (the "Motion")[2], CSP Asset II, LLC (the "Debtor") sought approval of bidding procedures through which the Debtor, as negotiated with DoubleLine CRE Finance LLC ("DoubleLine"), will determine the highest or otherwise best price for the sale of the property located at 9311 FM 620, Austin, Texas 78726 (the "Property") and substantially all of their assets (collectively, the "Purchased Assets"), but not including the Excluded Assets (as defined in the Motion).

The sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

On February 14, 2018, the United States Bankruptcy Court for the Western District of Texas (Austin Division) (the "Court") entered an Order (the "Bidding Procedures Order"), which, among other things, approved the process and procedures as set forth below (the "Bidding Procedures").

A.      Credit Bid.

The Debtor shall sell the Purchased Assets to DoubleLine pursuant to DoubleLine's credit bid if the sale of the Purchased Assets does not otherwise close to a third party in an amount equal to $30 million or higher[3] in cash by the "Drop Dead Date."[4] DoubleLine's credit bid shall be deemed to be a Qualified Bid.  If the Debtor fails to close a sale of the Purchased Assets by the Drop Dead Date, then DoubleLine shall purchase the Purchased Assets pursuant to its credit bid in an amount equal to the entire amount of the indebtedness owed by the Debtor to DoubleLine.

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, as applicable.

[3] Provided that DoubleLine in its sole discretion may agree to a sale to a third party for less than $30 million.

[4] The closing deadline for the Winning Bid shall be 120 days after entry of the Bidding Procedures Order.  If the Winning Bidder shall fail to close and a Back-Up Bidder has been selected at the Auction, the closing deadline for the Back Up-Bidder shall be 150 days after entry of the Bidding Procedures Order.  The later of the closing deadlines set forth herein shall be the "Drop Dead Date."

B.     Stalking Horse Bidder and Bid Protection.

SDP Investments, Ltd. is approved to be the Stalking Horse Bidder. [Or change to add that no Stalking Horse Bidder has been selected].  The bid by the Stalking Horse Bidder shall be deemed to be a Qualified Bid.

If a Stalking Horse Bidder is outbid at the Auction (defined below) or otherwise is not ultimately the Approved Buyer, the Stalking Horse Bidder shall be entitled to a payment in the amount of the greater of (i) 5% of the differential between the Opening Bid and the Winning Bid ("Differential") plus its reasonable expenses or (ii) 10% of the Differential; provided that the Stalking Horse Bidder does not withdraw its bid prior to the auction and the sale closes to an alternative bidder with a cash component equal to or greater than $30,250,000.00.

If the Stalking Horse Bidder is entitled to receive the Bidding Protection as set forth above, the Debtor will pay the Bidding Protection to the Stalking Horse Bidder by estate check from the proceeds of the sale to the alternative bidder immediately upon the consummation thereof.   If the Purchased Assets or the Property are purchased by DoubleLine pursuant to DoubleLine's credit bid, then no such Bidding Protection or other construed "break-up" fee shall be paid to the Stalking Horse Bidder.

C.     Due Diligence.

The Debtor shall establish a data room containing the Debtor's financial information, projections, contracts and other material sufficient to allow potential bidders to conduct due diligence by February 21, 2018.

D.     Qualified Bids and Bid Deadline.

Qualified Bidders[5] must submit a Qualified Bid (defined below) received by the Debtor by [**Friday, May 4, 2018 at 5:00 p.m.**] (Central Time) (the "Bid Deadline").  A Qualified Bid is required to be:  (i) equal to at least $30,250,000; (ii) is accompanied by earnest money in the amount of $200,000; (iii) does not contain a financing or due diligence condition; (iv) does not materially vary from the APA form provided by the Debtor; and (v) contains proof of financial wherewithal to close on any sale of the Property acceptable to the Debtor, and/or is in such amount as Debtor and DoubleLine may agree.

By [**May 7, 2018**,] the Debtor shall file a short Notice with the Court identifying any Qualified Bids that were received, or that no Qualified Bids were received.

E.     Form of APA and Sale Order.

By March 26, 2018, the Debtor shall file a proposed Asset Purchase Agreement ("APA") and corresponding sale order (the "Sale Order") with the Court.  If in the event a Stalking Horse Bidder is not selected, a form of APA and sale order agreed to by DoubleLine shall be filed with

---

[5] Qualified Bidder is defined as an entity that submits a Qualified Bid.

the Court. The Debtor shall provide copies of the APA in word processing formant to any Qualified Bidder requesting one.

The Sale Order, among other things, shall provide for DoubleLine to receive payment of its principal together with non-default interest at closing (other than a credit bid by DoubleLine). The Sale Order shall further provide that claims for disputed additional charges (including but not limited to default interest, fees and expenses, yield maintenance premium and exit fee) shall be escrowed pending further court order. The Sale Order shall also provide that the sale of the Purchased Assets was negotiated in good faith as to qualify any buyer of the Purchased Assets as a "good faith purchaser", and, as such, subject the sale to Section 363(m).

Objections to the relief sought in the order approving the sale must (a) be in writing and (b) filed and served, so as to be actually received by (a) the Debtor; (b) counsel for the Debtor; (c) counsel for the Approved Buyer; and (d) the Office of the United States Trustee for the Western District of Texas (the "Notice Parties") no later than _____, 2018 at 5:00 p.m. Central Time.

Any replies to objections to the relief sought in the Sale Order shall be submitted no later than one day before the Sale Hearing.

F.      Auction.

In the event the Debtor receives, on or before the Bidding Deadline, one or more Qualified Bids, an Auction will be conducted on [**Tuesday, May 15 at 2:00 p.m. (Central Time)**] (the "Auction") in open court at 903 San Jacinto, Courtroom No., 1, Austin, TX 78701. DoubleLine shall be entitled to attend the Auction, in its sole discretion, as an observer.

At the conclusion of the Auction, the Debtor shall select the highest and best offer. The second highest bidder shall be given the opportunity to be the Back-Up Bidder.

If the Debtor receives more than one Qualified Bid and the Auction is held, overbids shall be in increments of at least $100,000.

If no Qualified Bids with respect to the Purchased Assets are received on or before the Bidding Deadline, the Debtor will not conduct the Auction with respect to the Purchased Assets and, instead, will seek approval of the sale of the Purchased Assets pursuant to the Stalking Horse APA at the Sale Hearing.

G.      Sale Hearing and Sale Notice.

Within three (3) business days after entry of this Order, the Debtor shall serve the Sale Notice on (i) all creditors and parties in interest; (ii) all parties with whom the Debtor has conducted discussions or negotiations with regard to sale of the Debtor's assets;; and (iii) any other parties suggested by parties in interest within forty eight hours before the notice is to be given.

The Sale Hearing will be held in United States Bankruptcy Court for the Western District of Texas, located at 903 San Jacinto, Courtroom No. 1, Austin, TX 78701 on [**May 18, 2018 at 1:30 p.m.** (Central Time).]

H.    Assumption and Assignment Procedures.

No later than [**May 11, 2018**] the Debtor will file and serve a notice (the "Assumption and Assignment Notice") scheduling all of the executory contracts and leases that may be assumed and assigned pursuant to the Sale Transaction (the "Assumed Contracts and Leases"). The Assumption and Assignment Notice will notify all counterparties to the Assumed Contracts and Leases (a) that their executory contracts and unexpired leases may be assumed and assigned to either SDP Investments, Ltd. or an alternative bidder; and (b) of the cure amounts in the event the Debtor decides to assume such contracts or leases and assign them to the eventual purchaser.

Any objection (including to the cure amount set forth in the Assumption and Assignment Notice) to the Debtor's assumption of any of the Assumed Contracts and Leases and assignment of the Assumed Contracts and Leases to the successful bidder must be in writing, filed with the Court, and be actually received by the Notice Parties no later than[ **May 15, 2018 at 5:00 p.m.**] at 5:00 p.m. (the "Assignment and Cure Objection Deadline"), and must set forth a specific default under the Assumed Contracts and Leases and claim a specific monetary amount that differs from the amount, if any, specified by the Debtor in the Assumption and Assignment Notice.

If no objection is received by the Assignment and Cure Objection Deadline, then the assumption and assignment of the applicable Assumed Contracts or Leases will be authorized pursuant to section 365 of the Bankruptcy Code and the cure amounts, if any, set forth on the Assumption and Assignment Notice will be binding upon the non-Debtor party to the Assumed Contracts and Leases for all purposes and will constitute a final determination of total cure amounts required to be paid to the Assumed Contracts and Leases counterparty in connection with any potential assignment of such Assumed Contracts and Leases to the successful bidder. In addition, each non-Debtor party to such Assumed Contracts and Leases will be forever barred from objecting to the assumption and assignment of such contract or lease or the cure information set forth in the Assumption and Assignment Notice, including, without limitation, the right to assert any additional cure or other amounts with respect to the Assumed Contracts and Leases arising or relating to any period prior to such assumption and assignment. Furthermore, if no timely objection is received by the Assignment and Cure Objection Deadline, _____ (or the successful bidder, if applicable) will enjoy all of the rights and benefits under all Assumed Contracts and Leases acquired under the APA (or such other purchase agreement of an alternative successful bidder, if applicable) without the necessity of obtaining any party's written consent to the Debtor's assumption and assignment of such rights and benefits, and each such party will be deemed to have waived any right to object to, contest, condition, or otherwise restrict any such assumption and assignment.

If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing. At the sole discretion of the Debtor, the pendency of a dispute relating to cure amounts will not prevent or delay the

assumption and assignment of any Assumed Contracts and Leases.  If an objection is filed only with respect to the cure amount listed on the Assumption and Assignment Notice, the Debtor may proceed with the assumption and assignment of the Assumed Contract or Assumed Lease and resolve the dispute regarding the cure amount at a later date as set by the Court.

HOU:3864855.3

Business Operation Equipment

### Secured Climate Storage Leasing

- Sitelink Software
- Desktop computer
- Two office chairs
- Office telephone
- Lexmark printer
- Six-person golf cart and charger
- Four-person golf cart and charger
- 42-inch television
- Desktop computer (for security system)
- 64 security cameras
- Six 42-inch security monitors
- Eleven metal storage shelves
- Primo brand water cooler
- Mini fridge
- Eighty-two 39-gallon trash cans
- Five hand trucks
- Bucket ladder
- Two-foot ladder
- Six-foot ladder
- Twelve-foot ladder
- Pressure washer
- Pallet jack
- Cardboard box cart
- Nine small carts
- Eleven large carts
- Magnetic sweeper
- Ryobi brand grinding saw
- Two dock plates
- Two leaf blowers
- Shop vacuum

### FedEx ShipCenter

- PostalMate Software
- Desktop computer
- Zebra brand label printer
- Wasp brand scanner
- Receipt printer
- Dymo brand postage printer
- Mettler Toledo brand scale
- Genius by Cayan brand credit card reader
- Metal storage shelf

### United States Postal Service

- Endicia Software
- Desktop computer
- Zebra brand label printer
- Wasp brand scanner
- Receipt printer
- Dymo brand postage printer
- Mettler Toledo brand scale
- Genius by Cayan brand credit card reader
- Metal storage shelf

### Penske Truck Leasing

- Penske Software
- Desktop Computer
- Two office chairs
- Equinox brand credit card reader (Penske owned)
- Office telephone